**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
ROMEO SALTA JR. and PHYLLIS POLEGA,

Plaintiffs,

-against-

UNITED STATES OF AMERICA,

Defendant.
----------------------------------------------------------------X

**OPINION & ORDER**

**21-cv-08911 (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

In this tax refund case, Plaintiffs Romeo Salta Jr. ("Salta") and Phyllis Polega ("Plaintiffs"), a married couple, seek a refund for tax year 2015. The taxes at issue arose from the cancellation of debt on a mortgage loan.

Plaintiffs argue that the mortgage holder did not sign the key 2015 Relocation Agreement. Aside from Salta's, the only signature on that document belongs to the mortgage holder's agent. As the Agreement is a real estate transaction, Plaintiffs argue this violates New York's statute of frauds, and therefore, the Agreement establishing that the discharge of indebtedness occurred in 2015 is unenforceable. Thus, the Plaintiffs reason, the discharge of the debt (and its associated income tax) should not be attributed to 2015.

This argument fails for three reasons. First, Plaintiffs failed to raise this argument in their initial administrative claim, and that is fatal to this suit. Magnone v. United States, 902 F.2d 192, 193 (2d Cir. 1990). Second, the agreement was in writing, the mortgage holder's agent had apparent authority to act, and both sides ratified that contract through their conduct. So the Agreement is enforceable. See

1

generally Reinhold v Dowling, 35 AD3d 698 (2d Dept 2006); Jill Real Estate, Inc. v Smyles, 150 AD2d 640 (2d Dept 1989). Third, the statute of limitations to bring an action to recover the debt expired in 2015. See First American Title Ins. Co. v Holohan, 189 A.D.3d 1180 (2d Dept 2020). Hence, the debt could not be recovered after 2015.

Thus, after "a practical assessment of the facts and circumstances relating to likelihood of repayment," by 2015, it was "clear" the debt would not be recovered. See Felt v. C.I.R., 433 Fed.Appx. 293, 295–96 (5th Cir. 2011)(citing Cozzi); L&C Springs Associates v. C.I.R., 188 F.3d 866, 870 (7th Cir. 1999). Therefore, the tax was properly paid in 2015. For these reasons, Defendant's Motion for Summary Judgment is GRANTED, and Plaintiffs' Cross Motion for Summary Judgment is DENIED.

## I. BACKGROUND

### 1. Factual Background[1]

#### A. Salta's Purchase of the Point Lookout Property

In 2007, Plaintiff Salta purchased the "Point Lookout property" at issue. The contract sales price was $1,214,865, with $1,000,000 of the purchase price funded by a loan. Dkt. No. 34-1. Salta signed a note promising to repay the loan amount. Dkt. No. 34-2.

#### B. Default and Foreclosure Proceedings

In May 2009, the mortgage holder filed a foreclosure suit against Salta in New York Supreme Court, Nassau County. Dkt. No. 34-5. The principal balance

---

[1] The facts are not disputed (unless otherwise indicated).

2

due was $1,028,992.97, and the last payment that Salta had made on the loan was on July 1, 2008. Id. at 11. The foreclosure complaint stated that the mortgage-holder "has duly elected and does hereby elect to call due the entire amount presently secured by the mortgage." Id. at ¶ 8. Thus, the payments were "accelerated" in 2009.

In November 2013, BSI Financial Services, Inc. ("BSI"), advised Salta that it was now the mortgage servicer for the loan. Dkt. No. 34-8 at 259. In May 2014, the mortgage was reassigned to an entity called Newbury REO 2013, LLC ("Newbury REO"). Dkt. No. 34-10 at 002.

### C. Salta's Proposal to Settle Suits Focuses on Tax Implications

In January 2014, Salta wrote to the mortgage servicer, BSI, and asked "whether there is a possibility of working out a settlement of the pending litigation involving the property," and proposed a "settlement whereby the deed is transferred to BSI in exchange for cash and the withdrawal of all proceedings." Dkt. No. 34-9 at 264. Salta's letter noted his "primary concern" was "the tax implications of a debt forgiveness." Id. A few days later, after intervening correspondence, Salta proposed the following:

> [I]n exchange for $50,000 and termination of all court/foreclosure activities, I will transfer the deed to the note holder; in addition, the note balance would either be forgiven or assigned to another person/entity as I direct (whichever way this goes depends on the tax implications of debt forgiveness - I will have to research that) Id. at 262.

### D. 2015 Relocation Agreement

Salta and BSI agreed to a "Relocation Agreement" executed on January 7

and 9, 2015. Dkt. No. 34-11. That Agreement, in substantial part, reflected the proposal in Salta's email.

There, (i) Salta agreed to "relinquish any rights he may have to remain in the Property;" (ii) BSI agreed to make "a total cash payment of $25,000" to Salta; and (iii) BSI agreed to "forever waive" the mortgagee's "right to any deficiency judgment to which it may be entitled pursuant to actions taken to foreclose on the Property." Id. at 788, 781. The agreement specifically noted that BSI was "required by law to report the forgiven debt to the IRS," which "may increase [Salta's] taxes." Id. at 789.

Key to Plaintiffs' arguments here, while BSI signed the Relocation Agreement, the mortgage holder Newbury REO never signed it. Id.

On January 15, 2015, Salta transferred the deed for the property to Newbury REO. Dkt. No. 34-12. Salta also signed an affidavit stating that the consideration for his transfer of the deed was $25,000, along with "the full cancellation of all debts, real estate taxes, obligations, costs and deed transfer costs and charges secured by" the mortgage on the property. Dkt. No. 34-13.

**E. Plaintiffs' Joint Tax Return for Tax Year 2015**

BSI issued Salta an IRS Form 1099-A (Acquisition or Abandonment of Secured Property) for tax year 2015, reporting the cancellation of the $1,028,992.97 outstanding principal balance on the mortgage on the Point Lookout property. Dkt. No. 34-16. BSI separately issued Salta an IRS Form 1099-MISC (Miscellaneous Income) for tax year 2015, reflecting the $25,000 it paid him as part

of the transaction. Dkt. No. 34-17.

Plaintiffs included as a capital gain on their joint 2015 tax return the cancellation of the debt Salta owed on the mortgage on the Point Lookout property. Dkt. No. 34-18. On their Form 4797, Plaintiffs included a cancellation of debt figure of $1,028,993. Id.

### F. 2017 1099-C and Refund Request

In January 2018, BSI, as servicer, issued Salta an IRS Form 1099-C (Cancellation of Debt) for the 2017 tax year. Dkt. No. 34-19. A representative for BSI explained that it issued this form after Newbury REO had sold the Point Lookout property to a new owner in June 2017, and "there was a difference between the amount received" from the sale "and the amount owed" on the mortgage. Dkt. Nos. 34-20 and 34-21.

In July 2018, after receiving the Form 1099-C, Plaintiffs filed an IRS Form 1040X (Amended U.S. Individual Tax Return) for tax year 2015, which sought a refund of the taxes they had paid for the cancellation of the mortgage debt. Dkt. Nos. 34-22 and 34-24. Plaintiffs claimed that they had "erroneously" recorded the cancellation of debt in 2015 based on the Form 1099-A they had received, and noted the issuance of the 1099-C in 2017. Id.

In full, Plaintiffs' explanation reads:

> Taxpayer erroneously recorded sale of property in 2015 based upon Form 1099A issued by the creditor. In 2017 Form 1099C was issued by the creditor on the same property and liability.

Plaintiffs' amended 2015 return essentially sought to remove the previously

reported capital gain arising from the transfer of the Point Lookout property in lieu of foreclosure. Dkt. No. 34-3, Salta Depo. 88:23-89:6, 89:24-90:4.

Despite having noted the receipt of a 2017 Form 1099-C as part of the explanation for his and his spouse's proposed amendment of their 2015 return, Salta did not include any cancellation-of-debt income from the Point Lookout property in his 2017 return. Dkt. No. 34-23. Instead, he included a statement in Part IV (Explanations) of his 2017 return, which read as follows:

> Taxpayer received a 1099-C for taxable year 2017 from BSI Financial Services…This 1099-C resulted from real property that taxpayer formerly owned at 25 Lido Boulevard, Point Lookout, NY 11569. The taxpayer exchanged the subject real property in 2015, but was not, at that time, forgiven of the debt secured by the property. Because the debt secured by the property was incurred pursuant to a contract, the statute of limitations for BSI Financial's collection on that debt does not lapse until 2021, or six years after the taxpayer may have breached the loan agreement. See New York State Civil Practice Law and Rules Section 213(2). Income, if any, associated with the cancellation of debt is incurred once the limitations period on the collection of the debt lapses. See Securities Co. v. United States, 85 F. Supp. 532 (SDNY 1948), see also United States v. Kirby Lumber, 284 U.S. 1 (1931). Because BSI Financial's limitations period for any breach of contract action that it may hope to bring against taxpayer does not end until 2021, taxpayer does not have any income, if any [sic], until 2021, taxpayer does not her[e]in declare income, if any, from this transaction at this stage. Dkt. No. 34-23.

Crucial to Defendant's arguments, nothing in any of Plaintiffs' submissions to the IRS or to this Court (until this Motion) mentioned any argument that the 2015 Relocation Agreement was unenforceable under New York's statute of frauds.

### G. This Action

In 2021,[2] Plaintiffs brought this action, seeking a refund of the $113,087 they had paid for tax year 2015 stemming from the cancellation of the mortgage debt on the Point Lookout property. Dkt. No. 1. Their complaint suggests that the taxes at issue would have been properly payable in tax year 2017. Id. at ¶¶ 5-8.

Salta acknowledged at his deposition that that was his understanding of when the tax would be due. Dkt. No. 34-3, Salta Depo. 89:7-14. However, Plaintiffs did not pay any such taxes in 2017. Dkt. No. 34-23, Salta Depo. 91:13-15. Nor have Plaintiffs paid the taxes relating to the cancellation of debt on the Point Lookout property in any other year. Dkt. No. 34-3, Salta Depo. 93:21-23, 94:11-20, 95:11-19.

### 2. Procedural Background

In February 2022, the Parties consented to this Court's jurisdiction. Dkt. No. 14. In November 2023, Defendant moved for Summary Judgment. Dkt. No. 32. In December 2023, Plaintiffs cross moved for summary judgment. Dkt. No. 36. The Parties submitted several declarations, exhibits, and memoranda of law. Dkt. Nos. 33–44.

## II. LEGAL STANDARDS

### 1. Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to

---

[2] Defendant notes that "Plaintiffs filed this suit several weeks after the deadline for the IRS to assess taxes for tax year 2017 had passed." Dkt. No. 39 at 27.

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine issue" of a "material fact" is defined as a dispute that "may reasonably be resolved in favor of either party," and thus should be left to the finder of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of pointing to evidence in the record "which it believes demonstrate[s] the absence of a genuine issue of material fact." Id. at 323. If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In making this determination, the Court "must view all facts in the light most favorable to the non-moving party." See Eastman Kodak Co. v. Image Techn. Servs., Inc., 504 U.S. 451, 456 (1992); Gemmink v. Jay Peak Inc., 807 F.3d. 46, 48 (2d Cir. 2015). In evaluating cross-motions for summary judgment, each motion must be examined "on its own merits," and "all reasonable inferences must be drawn against the party whose motion is under consideration." Vugo, Inc. v. City of New York, 931 F.3d 42, 48 (2d Cir. 2019).

Finally, where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case." Feurtado v. City of New York, 337 F. Supp. 2d 593, 596 (S.D.N.Y. 2004)(Gorenstein, M.J.)(citing Nebraska v. Wyoming, 507 U.S. 584, 590 (1993)).

**2. Applicable Tax Law**

"It is well settled that gross income includes income from the discharge of indebtedness." <u>Ceban v. Capital Management Services, L.P.</u>, 2018 WL 451637, at \*5 (E.D.N.Y., 2018)(citing <u>Cozzi v. Comm'r of Internal Revenue</u>, 88 T.C. 435, 445 (1987)). The test for determining when cancellation occurs depends on "a practical assessment of the facts and circumstances relating to likelihood of repayment." <u>Felt v. C.I.R.</u>, 433 Fed.Appx. 293, 295–96 (5th Cir.  2011)(citing <u>Cozzi</u>). The weight given to various factors must "depend on the economic realities of the situation." <u>L&C Springs Associates v. C.I.R.</u>, 188 F.3d 866, 870 (7th Cir. 1999).

A debt is considered canceled or discharged "at the time an identifiable event makes it clear that the debt will never be repaid." <u>Schneller v. C.I.R.</u>, 1997 WL 720388, at \*2 (6th Cir. 1997). The "law recognizes that there may be more than one identifiable event that triggers the cancellation." <u>Felt</u>, 433 Fed.Appx. at 295–96. "Any 'identifiable' event which fixes the loss with certainty may be taken into consideration." <u>Id.</u>  When determining the proper tax year to attribute discharge of indebtedness, it is the "first" identifiable event that sets the date. <u>See, e.g.</u>, <u>Schneller</u>, 1997 WL 720388, at \*2.

**3. Burden of Proof**

"In a tax refund suit, the burden of proof is on **the taxpayer** to prove an overpayment of tax and the amount he is entitled to recover." <u>Heublein, Inc. v. United States</u>, 996 F.2d 1455, 1461 (2d Cir. 1993) (emphasis added);  <u>Silipigno v. United States</u>, 749 F. App'x 59, 61 (2d Cir. 2019) (summary order). Therefore, Salta must

prove there was no "identifiable event" in 2015 making "clear" that the mortgage debt would "never be repaid." <u>Schneller</u>, 1997 WL 720388, at *2.

## III. DISCUSSION

### 1. Variance Doctrine Prevents Plaintiffs from Raising the New Argument that the Agreement was Unenforceable.

The United States, as sovereign, may not be sued without its consent. <u>See United States v. Dalm</u>, 494 U.S. 596, 608 (1990). Thus, all suits brought against the United States must comply with the terms of the statute pursuant to which the government has consented to be sued. <u>See Lehman v. Nakshian</u>, 453 U.S. 156, 160 (1981). Actions against the United States for tax refunds must be brought under a narrowly construed set of guidelines set forth in 26 U.S.C. § 7422(a). <u>See Carione v. U.S.</u>, 291 F.Supp.2d 141, 145–46 (E.D.N.Y., 2003).

"Under 26 U.S.C. § 7422(a), an administrative claim for a refund filed with the IRS is a jurisdictional prerequisite to bringing a tax refund suit in federal court." <u>Chemoil Corp. v. United States</u>, No. 19 Civ. 6314 (LTS) (JW), 2023 WL 6257928, at *7 (S.D.N.Y. Sept. 26, 2023) (quoting <u>Magnone v. United States</u>, 902 F.2d 192, 193 (2d Cir. 1990)).

"Under the variance doctrine, a taxpayer may not raise different grounds in a refund suit than those brought to the IRS in an administrative claim for refund." <u>Chemoil</u>, 2023 WL 6257928, at *7 (citing <u>Magnone</u>, 902 F.2d at 193).

On the one hand, the taxpayer, "need only set forth facts in the claim sufficient to enable the IRS to make an intelligent review of the claim." <u>303 West 42nd St. Enterprises</u>, 181 F.3d at 278. On the other hand, it must "set forth in detail the

ground for the refund and facts sufficient to apprise the IRS of the basis for the refund." <u>303 W. 42nd St. Enterprises, Inc. v. IRS</u>, 181 F.3d 272, 277-78 (2d Cir. 1999) (citing Treas. Reg. § 301.6402-2(b)(1)).  It must provide "the agency an adequate opportunity to investigate the legal and factual bases of the claim." <u>See</u> <u>Angelus Milling Co. v. Commissioner</u>, 325 U.S. 293, 296 (1945); <u>Stern v. United States</u>, 949 F.Supp. 145, 149 (E.D.N.Y.1996).

Plaintiffs correctly argue that they need not set forth "each and every fact" sufficient to support the refund. Dkt. No. 42 at 7. However, here, Plaintiffs did not merely fail to allege certain facts in the administrative claim. Instead, they failed to allege the *theory* they advance now.

 Thus, this case is like <u>Carione</u>. <u>See</u> <u>Carione v. U.S., 291</u> F.Supp.2d 141 (E.D.N.Y., 2003). There, the court rejected a refund when "the amended return states a different theory than that which is advanced in the instant action." <u>See</u> <u>Carione</u>, 291 F.Supp.2d at 147.

Plaintiffs argue that the 2015 Agreement is unenforceable due to the statute of frauds. Dkt. No. 37 at 18–20. However, Plaintiffs' argument that the 2015 Relocation Agreement was unenforceable is entirely new. Dkt. No. 42.

Plaintiffs' initial explanation stated:

> Taxpayer erroneously recorded sale of property in 2015 based upon Form 1099A issued by the creditor. In 2017 Form 1099C was issued by the creditor on the same property and liability. Dkt. Nos. 34-22.

Even the 2017 return failed to note any theory that the 2015 Agreement was unenforceable. Dkt. No. 34-23. Instead, that return only included an argument

related to statute of limitation deadlines terminating in 2021 rather than 2015. Dkt.
No. 34-24.

> The 2017 explanation read as follows:

>> Taxpayer received a 1099-C for taxable year 2017 from BSI
>> Financial Services…This 1099-C resulted from real
>> property that taxpayer formerly owned at 25 Lido
>> Boulevard, Point Lookout, NY 11569. The taxpayer
>> exchanged the subject real property in 2015, but was not,
>> at that time, forgiven of the debt secured by the property.
>> **Because the debt secured by the property was
>> incurred pursuant to a contract, the statute of
>> limitations for BSI Financial's collection on that
>> debt does not lapse until 2021, or six years after the
>> taxpayer may have breached the loan agreement.**
>> See New York State Civil Practice Law and Rules Section
>> 213(2). Income, if any, associated with the cancellation of
>> debt is incurred once the limitations period on the
>> collection of the debt lapses. See Securities Co. v. United
>> States, 85 F. Supp. 532 (SDNY 1948), see also United
>> States v. Kirby Lumber, 284 U.S. 1 (1931). Because BSI
>> Financial's limitations period for any breach of contract
>> action that it may hope to bring against taxpayer does not
>> end until 2021, taxpayer does not have any income, if any
>> [sic], until 2021, taxpayer does not her[e]in declare income,
>> if any, from this transaction at this stage. Dkt. No. 34-23.
>> (emphasis added).

The IRS had no reason to seek any discovery regarding the enforceability of
the 2015 Agreement. Thus, while the Plaintiffs note the absence of a written
agreement between BSI and Newbury REO establishing an agency relationship, that
is unsurprising given that the IRS was ambushed with this theory after the close of
discovery.

Therefore, for this reason alone, Plaintiffs' refund claim can be rejected and
summary judgment granted in favor of the Defendant.

### 2. Plaintiffs' Mortgage Debt Was Discharged in 2015

Even if Plaintiffs had put forward the unenforceability argument in their administrative claim, it would still fail. After "a practical assessment of the facts and circumstances relating to likelihood of repayment, " and  "the economic realities of the situation," the debt was properly discharged in 2015. See Felt v. C.I.R., 433 Fed.Appx. 293, 295–96 (5th Cir.  2011)(citing Cozzi); L&C Springs Associates v. C.I.R., 188 F.3d 866, 870 (7th Cir. 1999).

### A. Relocation Agreement is Binding

The Court finds that the 2015 Relocation Agreement was binding. Dkt. No. 34-11. Plaintiffs are correct that Newbury REO never signed that Agreement. Id. However, when an agent acts on behalf of a principal with apparent authority, the agent executes a written agreement, and the principal ratifies the agent's written agreement after the fact—even if the contract relates to a real estate transaction—the contract is binding. See generally Reinhold v Dowling, 35 AD3d 698 (2d Dept 2006); See generally Jill Real Estate, Inc. v Smyles, 150 AD2d 640 (2d Dept 1989).

### i. The 2015 Agreement is in Writing

It is black-letter law that "a principal will be bound by the contracts executed by his agent with actual or apparent authority." UBS AG v. HealthSouth Corp., 645 F. Supp. 2d 135, 144 (S.D.N.Y. 2008).

The Relocation Agreement was signed in January 2015 by Salta and a BSI signatory. Dkt. No. 34-11. at 788-90.  The "Addendum" to that agreement, titled "Waiver of Mortgagee's Right to Deficiency Judgment," states that the "Mortgagee

forever waives its right to any deficiency judgment to which it may be entitled pursuant to actions taken to foreclose on the Property." Id.

### ii. BSI Had Apparent Authority

There are multiple indicia in the record that BSI was acting on behalf of Newbury REO. BSI was centrally involved in all of the key dealings.

First, Salta contacted BSI to negotiate the deed-in-lieu agreement.  See Dkt. No. 34-9. Second, BSI issued the $25,000 payment due to Salta under the Relocation Agreement, according to the IRS Form 1099-MISC.  Dkt. No. 34-17.  Third, BSI issued both the Form 1099-A in 2015 and the Form 1099-C in 2017 with respect to the Point Lookout mortgage debt.  Dkt Nos. 16 and 19. Fourth, BSI signed documents in 2015 as Newbury REO's "Attorney-in-Fact."  Dkt. No. 40-3 at 1021.

### iii. Newbury Aware BSI Acting on Its Behalf

Newbury REO maintained a copy of the Relocation Agreement in its records. Dkt. No. 40-4.  Moreover, Newbury REO's records also included the emailed negotiations between Salta and BSI leading up to the agreement—once again confirming Newbury REO's knowledge that BSI was acting on its behalf.  Dkt. No. 40-6. Because Newbury REO had possession and control over the agreement, as well as the negotiations leading to the agreement, there is no question that Newbury REO was fully aware of its terms.

Hence, Newbury REO "was aware of, and consented to, the terms of the . . . agreement." Reinhold, 826 N.Y.S.2d at 684; see IBJ Schroder Bank & Tr. Co. v. Resol. Tr. Corp., 26 F.3d 370, 375 (2d Cir. 1994).

### iv. Newbury and Salta Ratified the Written Agreement

Under the "doctrine of ratification . . . a party is held liable as a principal as a result of his affirmance of an act done by one who purports to be acting" on its behalf. See J.M. Heinike Assocs. v. Chili Lumber Co., 443 N.Y.S.2d 512, 513 (4th Dept 1981). "The acts of an agent are imputed to the principal 'if the principal adopts the unauthorized act of his agent in order to retain a benefit for himself.'" In re S. Afr. Apartheid Litig., 633 F. Supp. 2d 117, 122 (S.D.N.Y. 2009) (quoting Munroe v. Harriman, 85 F.2d 493, 495 (2d Cir. 1936)); accord Cologne Life Reinsurance Co. v. Zurich Reinsurance (N. Am.), Inc., 730 N.Y.S.2d 61, 68 (1st Dept 2001); see Restatement (2d) of Agency § 98.

Despite New York's statute of frauds, courts have applied this same framework to real estate transactions. See generally Reinhold v Dowling, 35 A.D.3d 698 (2d Dept 2006); Jill Real Estate, Inc. v Smyles, 150 A.D.2d 640 (2d Dept 1989).

Here, Newbury REO obtained the deed from Salta in January 2015. Dkt. No. 34-12. This was the only consideration in the Relocation Agreement. Dkt. No. 34-11. Thus, Newbury REO affirmed and ratified the agreement by receiving its promised benefit.

Salta, too, ratified the Agreement. He transferred the deed, and Salta concedes that Newbury REO never in fact pursued a deficiency claim against him, consistent with the agreement.  Dkt. No. 34-3 at 55:9-11.  Finally, even though he now asserts the contract was unenforceable, Salta has not sought to annul the contract or rescind

the deed transfer.  Indeed, he kept the $25,000 he received from the transaction, and "never took any action" to unwind the agreement.  Dkt. No. 34-3 at 48:12-16; 55:4-8.

As the 2015 Relocation Agreement is binding, it definitively resolves the refund claim. It is "well settled that the transfer of property by deed in lieu of foreclosure constitutes a sale or exchange for Federal income tax purposes." <u>Allan v. Commissioner</u>, 86 T.C. 655, 659 (1986), <u>aff'd</u>, 856 F.2d 1169 (8th Cir. 1988).

### B. 2015 Relocation Agreement is the First "Identifiable Event" that "Fixes The Loss With Certainty"

Plaintiffs argue that the discharge of indebtedness occurred in 2017. <u>See generally</u> Dkt. No. 42. However, Plaintiffs did not pay the taxes at issue in 2017, and Salta admitted that they do not intend to do so in any other year. Dkt. No. 34-3 at 91:13-15, 93:21-23, 94:11-20, 95:11-19.

The "law recognizes that there may be more than one identifiable event that triggers the cancellation." <u>Felt</u>, 433 Fed.Appx. at 295–96. "Any 'identifiable' event which fixes the loss with certainty may be taken into consideration." <u>Id.</u>  When determining the proper tax year to attribute discharge of indebtedness, it is the "first" identifiable event that sets the date. <u>See, e.g.</u>, <u>Schneller</u>, 1997 WL 720388, at *2.

Therefore, even if an event occurring in 2017 were an "identifiable event" making clear that the debt would not need to be paid, the key question is whether it is the *first* such identifiable event.

The 2015 Relocation Agreement, the transferring of the deed, the payment of $25,000, and various other actions indicating ratification of the Agreement all

occurred in 2015. Thus, the debt was discharged in 2015, and the tax was properly paid in 2015.

### 3. Plaintiffs Have Not Met their Burden to Show a Foreclosure Action Could Have Been Successfully Brought After 2015

Even aside from the 2015 deficiency waiver, a deficiency judgment against Salta could not have been sought after 2015 because the limitations period to file a claim against him for the mortgage debt expired that year. Plaintiffs persuasively argue this "is a separate and independent reason that the debt was deemed discharged and cancellation-of-debt income was generated" because it was "clear that the debt would never have to be paid." Dkt. No. 33 at 18–20 (citing  Jacobowitz v. Comm'r, T.C. Memo. 2023-107, 2023 WL 5274240, at *4 (T.C. 2023).

Treasury regulations state the "expiration of a statutory period for filing a claim or commencing a deficiency judgment proceeding" is an "identifiable event" that constitutes cancellation of debt for reporting purposes under tax regulations. See Treas. Reg. § 1.6050P-1(b)(2)(i)(C).

In New York, a six-year statute of limitations applies to mortgage foreclosure actions. See N.Y. C.P.L.R. § 213(4).  Once a mortgage debt is accelerated, "the Statute of Limitations begins to run on the entire debt." 53rd St., LLC v. U.S. Bank N.A., 8 F.4th 74, 78 (2d Cir. 2021).  "Acceleration occurs…by the commencement of a foreclosure action wherein the holder of the note elects in the complaint to call due the entire amount secured by the mortgage." MTGLQ Invs., L.P. v. Singh, 190 N.Y.S.3d 415, 417 (2d Dept 2023).  The foreclosure suit filed against Salta in 2009

sought the entire loan balance and thereby accelerated the debt.  Dkt. No. 34-5 at ¶¶ 8, 14.

Thus, due to the applicable six-year statute of limitations, Newbury REO—the successor mortgage holder—could not have pursued Salta for the mortgage debt after 2015, six years after the loan was accelerated in 2009.  See, e.g., MTGLQ, 190 N.Y.S.3d at 417.  For this separate reason, the mortgage debt was discharged for tax purposes in 2015.  See Jacobowitz, 2023 WL 5274240, at *5; Higgins v. IRS, 403 B.R. 537, 541 (E.D. Tenn. 2009).

### A. RPAPL Sec. §1303(3) One Action Rule and NY CPLR § 204(a) Did Not Toll Statute of Limitations

Plaintiffs argue that the statute of limitations period to recover on the note was tolled during the pendency of the initial foreclosure action. Dkt. No. 37 at 25. The Court finds that Plaintiffs cannot satisfy their burden of proof to show that the mortgage holder would have been permitted to bring a suit after 2015.

### B. RPAPL §1303(3) One Action Rule

Plaintiffs cite New York Real Property Actions & Proceedings Law ("RPAPL") § 1301(3), the so-called "one action rule," as a basis for tolling.  That rule prevents a mortgage holder from commencing both a foreclosure action and simultaneously a suit on the note. Thus, at the outset of a foreclosure case, a plaintiff has to make an election between the two remedies. See Wells Fargo Bank, N.A. v. Goans, 136 A.D.3d 709 (2d Dept 2016).

CPLR 204(a) provides that "where the commencement of an action has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of

the time within which the action must be commenced." Plaintiffs argue that this, in combination with RPAPL §1303(3), results in a tolling of the statute of limitations to proceed on the note while the foreclosure action is pending.

**C. Torsoe Bros. & First American**

Plaintiffs point to an Appellate Division case from the Second Department adopting their position: <u>Torsoe Bros</u>. <u>See</u> <u>Torsoe Bros. Constr. Corp. v McKenzie</u>. 271 A.D.2d 682, (2d Dept 2000). Trial Courts have cited <u>Torsoe Bros</u>. for the same point. <u>See eg.</u> <u>Emigrant Bank v. Greene</u>, 2015 WL 5405183, 2015 N.Y. Slip Op. 31712(U) (N.Y. Sup Ct, Queens County Sep. 09, 2015).

Defendant is correct that <u>Torsoe Bros.</u> is no longer good law. The Second Department (on this exact issue) clearly stated, "to the extent that this Court's prior decision in <u>Torsoe Bros. Constr. Corp. v. McKenzie</u> is to the contrary, that decision should no longer be followed." <u>First American Title Ins. Co. v Holohan</u>, 189 A.D.3d 1180 (2d Dept 2020).

Nevertheless, Plaintiffs are correct that the right question is whether <u>Torsoe Bros</u>. was good law in 2015. The Court holds that (even in 2015) the mortgage holders would have been unlikely to prevail with such an argument.

While <u>First American</u> explicitly overruled <u>Torsoe</u>, other decisions[3] from the Appellate Division had already ignored <u>Torsoe</u> and adopted the opposite position. <u>See</u>

---

[3] Defendant also cites to <u>Costa v Deutsche Bank Natl. Tr. Co. for GSR Mtge. Loan Tr. 2006-OA1</u>, 247 F Supp 3d 329 (S.D.N.Y. 2017). While <u>Costa</u> also declined to toll the statute of limitations during the pendency of a foreclosure action, Judge Failla explained that if the "time to pursue the *very same elected remedy* was automatically tolled" it "would produce absurd results and undermine the purpose of a statute-of-limitations scheme." <u>Costa</u>, 247 F.Supp.3d at 346 (emphasis in original). Here, it is not multiple foreclosure actions Plaintiff

Daldan v Deutsche Bank National Trust Company, 137 N.Y.S.3d 407, 2020 WL 6750817 (2d Dept 2020), U.S. Bank National Association v Joseph, 73 N.Y.S.3d 238, 2018 WL 1513698 (2d Dept 2018). These decisions reasoned that because mortgage holders are not prevented from bringing a foreclosure action but rather permitted to choose between two remedies (moving forward on the note or foreclosing on the property), the time limit for the second suit is not tolled under CPLR 204(a). Thus, like the mortgage holders in Daladan and Joseph, this Court finds that the mortgage holder here would have been unable to overcome this reasoning, even in 2015.

The outcome may be different if the burden were on the IRS. Harrell v. Commissioner of Internal Revenue, 765 Fed.Appx. 501 (2d Cir. 2019)("The burden of proof shifts to the Commissioner under certain circumstances."); Cebollero v. Comm'r of Internal Revenue, 967 F.2d 986, 989 (4th Cir. 1992); Foster v. Comm'r of Internal Revenue, 391 F.2d 727, 735 (4th Cir. 1968)); IRC § 7491(a).

However, here, with legal decisions going in either direction, Plaintiffs cannot meet their burden to show that the mortgage holders would have been able to resurrect the suit after 2015. Thus, after "a practical assessment of the facts and circumstances relating to likelihood of repayment, " and "the economic realities of the situation," the debt was properly discharged in 2015. See Felt v. C.I.R., 433 Fed.Appx. 293, 295–96 (5th Cir. 2011)(citing Cozzi); L&C Springs Associates v. C.I.R., 188 F.3d 866, 870 (7th Cir. 1999).

### 4. Remaining Arguments

---

argues results in tolling, but rather, a foreclosure action following a suit on the note. Costa's applicability to this case is thus limited.

As the Court finds that the Defendant's Motion should be granted for the above reasons, the Court declines to consider their remaining arguments. Finally, the Court finds Plaintiffs' remaining arguments unpersuasive.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment is GRANTED, and Plaintiffs' Cross Motion for Summary Judgment is DENIED.

**The Clerk of the Court is respectfully requested to close the case.**

SO ORDERED.

DATED:     New York, New York
           September 25, 2024


_____
JENNIFER E. WILLIS
United States Magistrate Judge